# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 12-00649-TLM** |
| JAY P. CLARK, | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEREMY GUGINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 13-06042-TLM** |
| | ) | |
| JAY P. CLARK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

Chapter 7 Trustee, Jeremy Gugino ("Trustee"), commenced this adversary

proceeding to deny the discharge of Jay P. Clark ("Debtor").[1]  Trustee initially

alleged causes under §§ 727(a)(2)(B), (a)(3), and (a)(4).  In addition, at the close

of trial Trustee moved to amend his complaint to include a count under

§ 727(a)(6)(A).  The Court subsequently ordered the parties to address this motion

_____

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, and references to the "Civil Rules" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

in their closing briefs.  The Court took all matters in this adversary proceeding under advisement upon the conclusion of briefing on November 13, 2014.  This Decision constitutes the Court's findings of fact and conclusions of law under Rule 7052.[2]

## FACTS

### A.   Procedural aspects

Debtor filed a voluntary chapter 12 petition on March 27, 2012.  He was represented in that case by attorney Brent Robinson.  Following hearings in the spring of 2013, the Court converted the chapter 12 case under § 1208(d) based on Debtor's fraud.[3]  Trustee was appointed in the converted case.

Trustee timely commenced this adversary proceeding objecting to Debtor's discharge, alleging that Debtor:

• transferred or concealed, after filing the petition, property of the estate with the intent to hinder, delay or defraud creditors or trustee in violation of § 727(a)(2)(B);

• failed to keep adequate records in violation of § 727(a)(3); and

---

[2]  The Court has jurisdiction over this core proceeding.  28 U.S.C. § 1334; 28 U.S.C. § 157(b)(1), (b)(2)(J).

[3]  The Hon. Jim D. Pappas was the presiding judge in the chapter 12 case, and he entered the oral findings and conclusions on May 31, 2013, and ordered the case converted to chapter 7. Shortly thereafter, Judge Pappas entered an order of recusal, and the case was reassigned.  The order of conversion was appealed, the District Court affirmed, and Debtor has appealed to the Ninth Circuit Court of Appeals.  There is no stay pending appeal.

MEMORANDUM OF DECISION - 2

• knowingly and fraudulently made false oaths in violation of

§ 727(a)(4)(A).

Three witnesses—Debtor, Trustee, and Judith Appleby—testified at trial on

August 26 and 27, 2014.  In addition, the parties agreed certain prior testimony

from a related action could be considered by the Court.  As a result, the testimony

of Robert Jones in *Gugino v. Clark's Crystal Springs Ranch, LLC*, Adv. No. 13-

06016-TLM (the "LLC Action") was admitted through transcript.[4]  The testimony

of Ed Gabriel and Jennifer Epis in the LLC Action was also admitted through

transcript.[5]

The parties also agreed to the admission of certain transcripts from the

underlying chapter 12 case, including the transcript of Debtor's testimony on May

24, 2013, in the § 1208(d) conversion hearing (Ex. 200), and the transcript of

Judge Pappas's May 31, 2013 oral ruling granting the motion to convert (Ex.

201).[6]

---

[4]  The transcript of Jones' testimony was not available at the time of trial in late August 2014.  Given the parties' agreement, the Court assigned it exhibit number 139.  When the Jones transcript was prepared and lodged in the record in the LLC Action, it was in two parts (filed as Adv. Doc. Nos. 100 and 102 in that action with the latter being Jones' rebuttal testimony).  Trustee, upon lodging them herein, identified them as Exs. 139 and 140.

[5]  The anticipated transcripts of these witnesses' testimony were assigned exhibit numbers 202 and 203, but the reporter prepared a single document, filed in the LLC Action as Adv. Doc. No. 101, and identified herein as Ex. 202.  There is therefore no document marked or admitted as Ex. 203.

[6]  The transcript of Debtor's May 24 testimony, Ex. 200, is located in the main bankruptcy case at Doc. No. 328, no physical copy was provided.  The transcript of the May 31 oral ruling and additional testimony of Debtor, is located in that case as Doc. No. 329, no

(continued...)

MEMORANDUM OF DECISION - 3

In addition to live testimony, the transcripts, and the exhibits, Trustee filed a "Statement of Admitted Facts," Adv. Doc. 31, based on the admissions found in Debtor's Answer to Trustee's Complaint.[7]  The Court also takes judicial notice of its files and records in order to explain the history of this case, to address certain procedural aspects, and to place the evidence in appropriate context with events in the case and adversary proceedings.[8]

### B.      The initial chapter 12 bankruptcy filing

Debtor filed his chapter 12 petition as "Jay P. Clark DBA Crystal Springs Ranch."  This was a skeleton filing, and lacked schedules and statements.

Initial schedules and statements were filed on May 3, 2012.  Ex. 100.  As with all the schedules and statements addressed in this Decision, Debtor executed the required declarations verifying under penalty of perjury that they were true and correct to the best of his knowledge, information, and belief.  He admitted during his examination at trial that he understood the significance of signing such

---

[6](...continued)
physical copy was provided.

[7]  Notwithstanding this filing, virtually all the facts therein were addressed through testimony or documentary exhibits.

[8]  The Court takes judicial notice of its files and records under Fed. R. Evid. 201.  Papers filed in a bankruptcy case by a debtor under penalty of perjury also have evidentiary significance under Fed. R. Evid. 801(d).  *In re Vee Vinhnee*, 336 B.R. 437, 449 (9th Cir. BAP 2005); *In re Morris*, 2010 WL 9485973, at *6 (Bankr. E.D. Cal. Oct. 7, 2010); *In re Jordan*, 392 B.R. 428, 444 n.32 (Bankr. D. Idaho 2008).

MEMORANDUM OF DECISION - 4

verifications.[9]  He also acknowledged that the "/s/" was an electronic indication

that his signature was actually affixed on the schedules and related documents that

were prepared in his attorney's office for filing with the Court following his

reading and review of the same.

The initial schedules listed, among Debtor's personal property, several

checking accounts.  Ex. 100 at 4–5.  Some were those of "Clark's Crystal Springs

Ranch, LLC," an Idaho limited liability company (the "LLC").  Nevertheless, in

the same schedule B, Debtor stated he had no ownership interest in the LLC, but

instead that the "Trust owns" the LLC.  Ex. 100 at 9.  This is a reference to the

Clark Farms Family Trust (the "Trust").  The Trust was, in fact, the sole member

of the LLC.  Debtor created the Trust and the LLC in 2008.[10]

Despite having listed the accounts in schedule B, Debtor admitted he had

no personal interest in the LLC's checking accounts.  He attempted to explain that

the disclosure of those accounts was due to significant "overlap" between his

assets and affairs and those of the LLC, and was done in order to provide

---

[9]  Debtor was trained as a lawyer and practiced until he was suspended by the Idaho
Supreme Court.  *See Idaho State Bar v. Clark*, 283 P.3d 96 (Idaho 2012).

[10]  In the LLC Action, Trustee sued the LLC and the Trust seeking to determine that they
were invalid at formation, treated as Debtor's alter ego, and should be substantively consolidated
with Debtor's estate.  *See* Adv. No. 13-06016-TLM.  The Court entered a decision, *see Gugino v.
Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL 7409086 (Bankr. D. Idaho Dec. 30,
2014), and a judgment in that adversary proceeding in favor of Trustee on the substantive
consolidation claim.

MEMORANDUM OF DECISION - 5

"clarity."[11]

Schedule B disclosed Debtor's personal interest in the Trust as worth $150,000. He testified that this was an estimate of the rights he had—as both the grantor and the trustee of the Trust—to make distributions to himself.[12] But he also inconsistently testified that the $150,000 figure was an estimated "share" due him should the Trust recover crops or their value.[13]

Schedule B also disclosed, without qualification, that Debtor owned approximately $1,284,000 in crops. He later testified that this disclosure was not accurate and claimed the crops were actually the LLC's asset, not his. Debtor attempted to put the onus on his attorney, Robinson, or on Robinson's non-lawyer staff, for this and other filing errors that resulted in the inclusion of LLC assets on his personal bankruptcy schedules.[14] But in other, inconsistent testimony he

---

[11]  That clarity never existed; instead, confusion began the moment Debtor filed his case as "DBA Crystal Springs Ranch." *See Clark*, 2014 WL 7409086, at *6 n.32; *see also In re Aldape Telford Glazier, Inc.*, 410 B.R. 60, 63–64 (Bankr. D. Idaho 2009) (discussing the improper use of DBA to bring in assets of a related LLC).

[12]  Debtor was the initial trustee of the Trust, and continued in that role until his case was converted to chapter 7. Only thereafter did Debtor cede that role. In the early summer of 2013, Robert Jones was approached to act as trustee (though, by Jones' testimony, he was not acting independently of Debtor). Jones was then replaced as trustee by Debtor's sister, Judith Appleby, in late summer 2013.

[13]  Debtor testified that he could not recall how he came up with the $150,000 amount, but believed it was his estimated share of interest in the crops, and that Brent Robinson's office assistant was helpful in coming up with the estimate. This is one of several problematic items on his original schedules that he claims were initiated or encouraged by Robinson's office.

[14]  Neither Robinson nor his staff were called to testify. For that reason, and given Debtor's intimate familiarity with (and sole control over) the operations of the LLC and the Trust,
(continued...)

MEMORANDUM OF DECISION - 6

indicated his disclosure of LLC assets or income was purposeful, and his intent was to use LLC assets as well as personal assets to ensure payment of creditors in the chapter 12. Debtor testified, in this vein, that he had discussions with his second counsel (Donald Gadda, who substituted for Robinson) regarding a "fair allocation" of the disclosed crop income to himself personally and to the LLC.

The initial schedules also disclosed seven motor vehicles, including a 2007 GMC pickup, a 2001 "Nort" camper, a utility trailer, and a boat. Debtor also disclosed six items of farm equipment.

Debtor disclosed receivables allegedly owed to him by Owyhee Farming Company, Dan Carter and Lance Funk collectively worth $326,000.

Debtor filed a schedule H ("Codebtors") listing the LLC as a codebtor on five creditor obligations. Trustee established through examination that Debtor's schedule F included numerous other creditors that could assert claims against both Debtor and the LLC as codebtors and those creditors should therefore have been shown on schedule H. Debtor argued that, by including the term "trade debt" in his schedule F description of his creditors' claims, he felt it effectively indicated that the LLC was also a codebtor.[15]

---

[14] (...continued)
and because of his training as a lawyer, and in light of the whole of his testimony, the attempted deflection was not persuasive.

[15]  Specifically, Trustee addressed the debts listed as owed to Bingham Cooperative, Clark and Feeney Law Offices, DeVries Family Farm, Forage Complete, Jennifer Epis, John
(continued...)

MEMORANDUM OF DECISION - 7

Debtor listed his regular monthly income as $9,100 (or $109,200 per year) on his schedule I, comprised of $8,400 from "operation of business" and $710 as income from real property.  However, all the appended business income and expense information is that of the LLC.

Debtor's statement of financial affairs ("SOFA") alleged Debtor received no income at all in the three months before filing, but $2.4 million in 2011 and approximately $1.3 million in 2010.  This was, however, the putative gross income of the LLC.  Debtor's actual "income" drawn *from* the LLC is different, and is reflected in a QuickBooks account of the LLC ("Jay's Income: owner draws").  Ex. 113.  Debtor had access to this QuickBooks data not only when preparing his taxes, but also when preparing and amending his schedules.[16]

Debtor's SOFA at question 14 indicated he was holding or in control of property owned by the LLC (farm equipment itemized on an "Ex. B" to the SOFA) worth about $290,000, and property owned by his parents John and Constance Clark (farm equipment itemized on an "Ex. A" to the SOFA) worth about $764,000.  Debtor was adamant that his parents leased all their farm

---

[15] (...continued)
Clark, John Deere Credit, LM Davenport, Mid Valley Dairy, Murphy Land Company, Scott Clark, and Van Bourn Calf Ranch, where Debtor failed to mark an "X" in the co-debtor column.

[16]   In the LLC Action, the Court determined from the QuickBooks data that Debtor misrepresented the income earned in the six months preceding the chapter 12 filing.  *See* 2014 WL 7409086, at *10 (discussing income and Rule 1007 assertions).

MEMORANDUM OF DECISION - 8

equipment to the LLC.[17]  He also contended at trial that there were errors in the

exhibits A and B he attached to his SOFA because they were made in 2007 and

items of equipment had been bought and sold thereafter.  His explanations were

not credible as to why he provided inaccurate lists to his counsel for use in the

filing, or why he executed the schedules and statements with these and other

inaccurate assertions and itemizations.  For over a year during the chapter 12,

Debtor made no changes to the initially filed schedules and statements.  Then, on

May 23, 2013, Debtor amended his schedule B, *see* Ex. 101, but only made

minimal changes to account balances.  Debtor also at that time added to his SOFA

several businesses in which he had an interest.  *Compare* Ex. 100 at 47, with Ex.

101 at 12.  He testified that this amendment resulted from creditors' counsel

identifying the omission.

### C.    The post-conversion amended schedules and statements

#### 1.    August 7, 2013 amendments

The chapter 12 case was converted to chapter 7 on May 31, 2013.[18]  After

conversion, Debtor amended his schedules and SOFA.  Ex. 103.  In this

---

[17]   The lease between Debtor's parents and the LLC was executed on the eve of the
chapter 12 filing though asserted as made on January 14, 2008.  *See* 2014 WL 7409086, at *8.
This allegedly effective date preceded the February 2008 formation of the LLC.  *Id.* at *7 (noting
that the LLC's articles of organization were filed and its operating agreement was made in
February 2008).  Trustee contested the characterization of a lease and argued the equipment was
conveyed to the LLC, in part due to the LLC's claiming the depreciation on those assets.  Trustee
and Debtor's parents later settled those claims.

[18]   *See* Order Granting Motion to Convert Case to Chapter 7, Case No. 12-00649-TLM,
Doc. No. 262.

MEMORANDUM OF DECISION - 9

amendment:

> • The number of vehicles Debtor claimed he personally owned dropped from nine to six.  He deleted the 1995 Chevrolet pickup, 2007 GMC pickup, and 2001 Nort camper.

> • Debtor asserted he had no interest whatsoever in the Trust, where he had originally claimed a $150,000 interest.[19]

> • Debtor claimed a one-third (1/3) interest in the disclosed crops, instead of the full value.

> • The farm equipment previously listed on schedule B as Debtor's equipment was amended to show the LLC as the owner.

> • Debtor checked several (but still not all) of the "co-debtor" boxes on his amended schedule F to reflect the LLC's liability.

### 2.    August 8, 2013 amendments

Debtor further amended his schedules just one day later, on August 8, 2013. Ex. 105.  This amendment disclosed three assets for the first time:

The first was a one-third "tenancy in common" interest worth $42,000 in certain real property in Elmore County.  *Id.*[20]  The documents regarding this

---

[19]   Despite removing the asserted $150,000 value, Debtor did not increase his list of contingent receivables to disclose the $150,000 "contingent receivable" he claimed the LLC owed him as his "share" of LLC crops or crop proceeds and which he testified, at one point, formed the value of his interest in the Trust.

[20]   When asked why this was not disclosed in the amendments made the day before (*i.e.*, (continued...)

MEMORANDUM OF DECISION - 10

interest include warranty deeds recorded on March 27, 2012—the very day of

Debtor's chapter 12 filing—conveying a 1/3 interest in such property to Debtor

and a 2/3 interest to his parents, John and Constance Clark.[21]  Debtor testified that

his 1/3 interest was a "gift" from his parents.  While the deeds were recorded on

the date the petition was filed, a title commitment in favor of Debtor and his

parents in connection with this purchase had been sought three weeks earlier.  The

documents also show Debtor signed escrow closing instructions and a settlement

statement on the transaction.  Debtor's amendment of his schedules, which was

over 16 months later, was after Trustee had independently discovered this asset

from other sources.

The second was Debtor's ownership of a 2008 Chevrolet pickup.  Trustee

had discovered that Debtor had an ownership interest in this pickup, the title of

which states that the owner is the LLC "or" Debtor.  Ex. 120.  It appeared in

Debtor's amended schedules only after being brought to light by Trustee.

The third was Debtor's ownership of a 2008 Arctic Cat ATV, similarly

---

[20] (...continued)
August 7), Debtor blamed it on his then attorney, Gadda.  Confronted with declarations he signed
regarding the accuracy of the August 7 amendments, Debtor said he had read that amendment,
but he supposed not very well.

[21]  *See* Ex. 119.  These deeds, which were from several parties who evidently held the
property in common, were recorded at 4:11 p.m. on March 27.  *Id.*  Debtor's petition was filed at
5:51 p.m. that same day.

titled.[22]

### 3.    August 14, 2013 amendments

Debtor amended his schedules again on August 14, 2013, adding two

"interests in mineral rights" on specifically described parcels of property in

Canyon County, Idaho.  Ex. 127.  He did so only after the lack of disclosure had

been brought to his attention by Trustee, who had independently discovered these

recorded rights.  Ex. 121.

### D.    Other undisclosed assets

Prior to the filing of the petition, state court litigation had commenced

between Debtor and Murphy Land Company ("MLC").  As noted by this Court in

prior decisions, the state court had dispossessed Debtor from certain real property

in what has been termed the "Lease Litigation."  After bankruptcy, additional

litigation between Debtor and MLC ensued (the "Lien Litigation").  In that

litigation, Debtor asserted counterclaims to foreclose his personal farm labor lien

and seed lien, as well as liens asserted on behalf of the LLC.  Ex. 116.  Debtor

executed the farm labor liens and seed liens—both as a claimant personally and on

behalf of the LLC as a claimant—and he recorded them between May 17, 2012

and June 12, 2012.  *Id.* at Exs. 1–6.  These documents claimed liens related to seed

---

[22]   The August 8 amendment also asserted that in May 2011, the 2001 Nort camper had
been "sold – traded in –."  These amendments also indicated that the 1995 Chevrolet pickup and
the 2007 GMC pickup were sold during the chapter 12.  The post-petition conduct is addressed
separately below.

MEMORANDUM OF DECISION - 12

and labor for crops harvested or to be harvested in 2012.  In the Lien Litigation,
Debtor also asserted claims against Lance Funk related to a sugar beet contract,
and against Owyhee Farming Co., LLC for breach of an irrigation agreement.  As
noted, the May 3, 2012 schedules, Ex. 100, disclosed "accounts receivable" from
Owyhee Farming Co. and Funk, however, the August 7 amended schedules,
indicated that these accounts receivable were owed to the LLC, and that Debtor
had no interest.  Ex. 103.  The May 3, 2012 schedules did not disclose any claims
or counterclaims against MLC, though the existence of the Lease Litigation was
shown in the SOFA.  Ex. 100 at 43.  None of the original or subsequently
amended schedules asserted the existence of any farm labor or seed liens, or
similar claims by Debtor.[23]

### E.    Post-petition conduct regarding certain estate assets

### 1.    2007 GMC pickup

The Debtor owned a 2007 GMC pickup on the petition date.  He admitted
selling the vehicle in September 2012, during the chapter 12 case. The sale was to
Chris Unruh in exchange for approximately $12,000 in wheat seed.  Ex. 118.  A
debt to Chase Bank secured by this vehicle, *see* Ex. 100 at 17 (sched. D), was paid
off.  The sale of the vehicle and the satisfaction of the secured claim were not

---

[23]  In argument, Debtor contended that disclosing a personal interest in "crops"
effectively disclosed seed or labor liens.  This was not persuasive for several reasons, including
the detail that was provided when the counterclaim was filed asserting such liens.

disclosed to or approved by the Court.[24]

When examined about the sale, Debtor said he asked his attorney, Robinson, about the propriety of the transaction and Robinson assured him that he would discuss the transaction with the chapter 12 trustee if necessary. No further evidence was provided and, as noted, Robinson was not called to testify. Nor was the chapter 12 trustee.

### 2.    2011 Camper

Debtor owned a 2011 Arctic Fox camper when he filed his chapter 12 petition. The camper was security for a loan made by Sterling Bank. *See* Ex. 100 at 18 (sched. D). The camper was sold to Todd Knight on April 3, 2013, for $22,000, which satisfied the secured debt and provided $500 to Debtor. Ex. 115 at 3. Debtor explained at trial that he felt he should not have a nice camper while in bankruptcy, so he decided to sell it. This transaction was not disclosed to or authorized by the Court.

### F.    Records and bookkeeping

Jennifer Epis, the bookkeeper for the LLC, testified in the LLC Action regarding the bookkeeping practices she maintained. Ex. 202. She noted that Debtor was not treated as an "employee" of the LLC and was never paid a wage or

---

[24] Though the Court approved a stipulation between Chase Bank and Debtor to bring current the loan secured by the vehicle as an alternative to granting relief from the stay, *see* Case No. 12-00649-TLM at Doc. Nos. 101 and 102, the Court never addressed a motion for sale of the vehicle to pay off Chase Bank's outstanding debt.

MEMORANDUM OF DECISION - 14

salary.  Instead, Debtor took funds from checking accounts of the LLC by check,

cashiers check, and ATM or electronic withdrawal, and had the LLC pay certain

of his personal bills.  Epis categorized all such activity as "owner draws" and

tracked it in an LLC QuickBooks account called "Jay's Income: owner draws."

Ex. 113.  Debtor's accountant, Edward Gabriel, testified that Debtor included the

LLC activity on his personal tax return, and the LLC filed no separate return.[25]

Debtor acknowledged that the LLC directly paid many of his personal

creditors including student loans, credit cards, child support, travel (including

travel for a personal friend, as well as an undisclosed loan to that friend).  The sole

documentation for these transactions was the "Jay's Income: owner draws"

account.  No additional documentation regarding the transactions was provided,

such as receipts, billing statements, or the like.[26]

---

[25]  According to Mr. Gabriel, the tax return filing method selected by Debtor complies
with state and federal law.  The Court's decision in the LLC Action explains in greater detail the
nature of and limits on the advice given by Gabriel, and the manner in which the tax returns were
filed.

[26]  As noted, the Court in the LLC Action granted Trustee's request for substantive
consolidation of the LLC, the Trust and Debtor's estate.  *Gugino v. Clark's Crystal Springs
Ranch, LLC*, 2014 WL 7409086.  This Court grappled with Debtor's treatment of the LLC and
the failure to observe its separateness from his personal finances, which ultimately resulted in
consolidation. The Court considered several factors in arriving at this decision, including: (1)
whether the interrelationships between the entities were closely entangled; (2) whether the
entanglement of business affairs was so extensive that the cost of untangling would outweigh any
benefit to creditors; (3) the presence or absence of consolidated financial statements; (4) the
difficulty in segregating the individual debtor's assets and liabilities; (5) whether there was a
unity of interests and ownership; and (6) whether assets were transferred without observance of
corporate formalities.  *Id.* at *15 (citing *Union Sav. Bank v. Augie/Restivo Baking Co. (In re
Augie/Restivo Baking)*, 860 F.2d 515, 518 (2d Cir. 1988)).

MEMORANDUM OF DECISION - 15

### G.    The injunction

The Court entered an injunction in the LLC Action on June 24, 2013, in order to protect the LLC's assets pending the litigation therein.[27]  The injunction provides in pertinent part:

> IT IS HEREBY FURTHER ORDERED, that the Company and the Trust, as well as any and all agents of the same, are RESTRAINED AND PROHIBITED from transferring any of the assets of those entities, including any funds from the bank accounts of the same, absent either express written permission by the Trustee or express Order of this Court.

Adv. No. 13-06016-TLM, Doc. No. 16 at 3.

Appleby and Debtor were both aware of the injunction.[28]  Both indicated at trial that the farming equipment belonging to the LLC had been used on dates subsequent to the entry (and subsequent to their awareness) of the injunction.

Appleby testified that the equipment had been used as late as spring 2014. Debtor testified that the equipment had been used to clear land, build fences, and help farm property belonging to his parents, John and Constance Clark, as late as spring 2014.  He testified that he did not believe he had done anything wrong because no harm had come to the equipment.

Debtor acknowledged there was no lease agreement in place for the post-

---

[27]  *See* Adv. No. 13-06016-TLM at Doc. No. 16.

[28]  Debtor signed and accepted service of the preliminary injunction on July 8, 2013, as indicated by Doc. No. 18 in the LLC Action.  Appleby testified that she could not do much in her capacity as manager of the LLC and trustee to the Trust in late summer/early fall 2013 because of the injunction's presence.

MEMORANDUM OF DECISION - 16

injunction use of this equipment, and the LLC did not receive payment for the use.

Significantly, it is clear that neither the Court nor Trustee approved the use of the

equipment.

As noted, Debtor disavowed personal ownership of the equipment,

contending the LLC had leased the equipment from his parents.  Consequently,

Debtor's actions to facilitate the removal and use of the equipment subsequent to

the entry of the injunction are viewed as the acts of an agent of the LLC (with

Appleby's knowledge).  The injunction, however, restrained the LLC, the Trust

(as member of the LLC), and "any and all agents of the same."

## DISCUSSION AND DISPOSITION

### A.    Trustee's Motion to Amend

Trustee seeks to amend his complaint to assert a claim for denial of

discharge under § 727(a)(6)(A) on the basis that Debtor refused to obey an order

of the Court.  He suggests this amendment is proper under Civil Rule 15(b),

applicable here under Bankruptcy Rule 7015.  Civil Rule 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties'
> express or implied consent, it must be treated in all respects as if raised
> in the pleadings. A party may move—at any time, even after
> judgment—to amend the pleadings to conform them to the evidence
> and to raise an unpleaded issue.

The purpose of Civil Rule 15(b) is to permit courts to amend pleadings to

conform to the evidence presented at trial and reflect the case that was actually

litigated.  6A Charles Alan Wright et al., Federal Practice and Procedure § 1491

MEMORANDUM OF DECISION - 17

(3d ed. 2014); *accord Cole v. Layrite Prods.*, 439 F.2d 958, 961 (9th Cir. 1971).

Thus, the Rule embodies a liberal policy in favor of allowing pleading

amendments at any time during, and even after, trial. *See Consol. Data Terminals*

*v. Applied Digital Data Sys.*, 708 F.2d 385, 396 (9th Cir. 1983); *Salven v. Munday*

*(In re Kemmer)*, 265 B.R. 224, 230 (Bankr. E.D. Cal. 2001) (permitting trustee to

amend complaint after trial where the proposed amendment did not prejudice the

objecting party and that party had full opportunity to cross-examine witnesses).

Evidence was presented regarding the use of the equipment post-injunction,

and established that Debtor was personally involved in that use. Debtor had a full

opportunity to address the issue, and in fact testified directly to the matter. And

prior to Debtor's testimony, Appleby had testified that the LLC was inactive

because of the prohibitory effect of the injunction and, therefore, it had not been

farming since June 2013.

Debtor argues he did not appreciate that this evidence could relate to

another possible ground for denial of discharge, to wit the violation of the Court's

Order. This is neither a defense to the Civil Rule 15 motion nor persuasive.

Trustee's questions regarding the use of equipment by Debtor and his family were

manifestly posed in the context of the injunction's existence. Debtor asserted in

his direct testimony that he did nothing to violate the injunction, and responded to

questions from Trustee regarding the same. Further, Debtor could have objected,

but did not, to the questioning as being outside the issues in the case as framed by

MEMORANDUM OF DECISION - 18

the pleadings.

The Court finds Trustee's oral motion meets the requirements of Civil Rule

15(b)(2).  The motion will therefore be granted and the complaint deemed

amended to include a cause under § 727(a)(6)(A).[29]  The parties have addressed

the cause in their briefing, and the Court will address the merits later in this

Decision.

### B.    Discharge authorities generally

Trustee seeks to deny Debtor a discharge under § 727(a)(2), (3), (4), and

(6).  Those sections provide that the Court shall grant a debtor a discharge unless:

> (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an
> officer of the estate charged with custody of property under this title,
> has transferred, removed, destroyed, mutilated, or concealed, or has
> permitted to be transferred, removed, destroyed, mutilated or
> concealed—
>         . . .
>         (B) property of the estate, after the date of the filing of the
> petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed
> to keep or preserve any recorded information, including books,
> documents, records, and papers, from which the debtor's financial
> condition or business transactions might be ascertained, unless such act
> or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the
> case –
>         (A) made a false oath or account;
>         . . .

---

[29]    Trustee also filed a motion in the main case, *see* Case No. 12-00649-TLM at Doc. No.
558, seeking to extend time to object to discharge under Rule 4004(b)(2).  That motion has not
been ruled upon.  Given the ruling on the Civil Rule 15 motion, the Rule 4004(b)(2) motion is
moot and need not be addressed.

MEMORANDUM OF DECISION - 19

. . . or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

. . .

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

Discharge exceptions "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008). As stated in *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007)*,* "[A] total bar to discharge is an extreme penalty." "The reasons for denial of a discharge must be real and substantial rather than technical and conjectural[.]" 6 Collier on Bankruptcy ¶ 727.01[4], 727-12 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed 2010). But notwithstanding these cautions, the burden of proof in § 727(a) litigation is a preponderance of the evidence. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## C.    Section 727(a)(2)(B)

Section 727(a)(2)(B) addresses the transfer or concealment of property of the estate post-petition with the intent to hinder, delay or defraud either creditors or "an officer of the estate charged with custody of property under this title" (*i.e.*,

MEMORANDUM OF DECISION - 20

Trustee).  To obtain denial of Debtor's discharge under § 727(a)(2)(B), Trustee

must show (1) the disposition of property by transfer, removal, destruction, or

mutilation, or concealment of such property, and (2) that Debtor acted with actual

intent to hinder, delay, or defraud a creditor or the trustee.  *Petro Concepts, Inc., v.*

*Mundt (In re Mundt)*, 2009 WL 5386131, at *15 (Bankr. D. Idaho Dec. 9, 2009).

This provision requires actual, not constructive, intent despite the fact that its

language does not include the word "actual."  *Devers v. Bank of Sheridan, Mont.*

*(In re Devers)*, 759 F.2d 751, 753 (9th Cir. 1985).  A plain reading of the statutory

language reveals that the required intent to "hinder, delay, or defraud" is stated in

the disjunctive, so an actual intent to hinder, or to delay, is sufficient.  *See Bernard*

*v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996).  Additionally,

courts may infer the requisite intent from all the facts and circumstances of a case,

because a debtor is unlikely to testify directly that his intent was improper.  *First*

*Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986); *Devers*,

759 F.2d at 753–54.  The intent may be established by circumstantial evidence, or

by inferences drawn from a course of conduct.  *U.S. Trustee v. Snodgrass (In re*

*Snodgrass)*, 359 B.R. 278, 288 (Bankr. D. Idaho 2007).[30]

---

[30]  Where fraudulent intent is not immediately apparent from testimony, Ninth Circuit
case law directs the Court to the "badges" of fraud.  *Retz*, 606 F.3d at 1200 (citing *Emmett Valley
Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992)).

### 1.    The conduct at issue was post-petition

The conduct at issue consists of transfers made during the chapter 12. Debtor argues that § 348, establishing the effect of conversion, provides him a defense.  He contends that § 348(a) and (b) change the petition date in his case to the date of conversion, and therefore the actions Trustee alleges occurred postpetition (namely the unauthorized transfer or sale of estate property during the chapter 12 case) in fact occurred *pre*petition, and § 727(a)(2)(B) does not bar his discharge.

Section § 348 provides:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

> (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such a chapter.

Debtor's argument is unpersuasive.  Simply put, § 348(b) does not apply in this adversary proceeding.  The Court is not addressing a claim under any of the Code sections listed in subsection (b).  Therefore, despite Debtor's conversion

MEMORANDUM OF DECISION - 22

under § 1208, the petition date remains March 27, 2012, the date Debtor filed for chapter 12 relief.

### 2.      The post-petition transfers

As set forth above, the evidence establishes that Debtor transferred, after filing his chapter 12 petition, a 2007 GMC pickup and a 2011 camper.  Neither transfer was authorized by the Court.

However, a chapter 12 debtor has many of the rights and powers of a trustee.  *See* § 1203.  The powers of a trustee include use, and sale, of property of the estate without express Court order if it is done in the ordinary course of business.  *See* § 363(c)(1).  Debtor professed not to know if notice or approval of the two transactions would be required, and therefore he relied on Robinson.  Neither Robinson nor the chapter 12 trustee was called to testify.  And while the Court has previously noted Debtor's legal background, no evidence was presented as to the degree of his bankruptcy law knowledge.  Certainly prudence, especially by a former lawyer as a chapter 12 debtor in a hotly contested bankruptcy on the heels of significant state court litigation, would have dictated that Court approval should have been obtained, at least in the absence of a careful and considered decision as to the ordinariness of the conduct.  But Debtor was represented by bankruptcy counsel, and testified without contradiction that Robinson was to

MEMORANDUM OF DECISION - 23

address approval or authorization if needed.

The Court concludes that, while a credible issue was raised, Trustee did not prove by a preponderance of the evidence that the transfers were made with the requisite intent.

### 3.    Concealment

In addition to "transfers," § 727(a)(2)(B) prohibits "concealment" with the described statutory intent to hinder, delay or defraud a creditor or trustee.  This can be concealment of either property of the debtor or property of the estate. Trustee must prove by a preponderance of the evidence both concealment and the subjective intent.  *Retz*, 606 F.3d at 1200 (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

From the filing of the chapter 12 case on March 27, 2012, to the amendment of the schedules on August 7 and 8, 2013, Debtor failed to disclose, among other assets constituting property of the estate, a 1/3 interest in land located in Elmore County, Idaho (Ex. 119); a 2008 Chevy pickup (Ex. 120); a 2008 Arctic Cat ATV; mineral rights on two separate properties (Ex. 121); and seed and labor liens and counterclaims against creditors (Ex. 116).  Debtor did not disclose these assets until his amended schedules of August 7 and 8, 2013, which he filed after Trustee had already discovered most of this undisclosed property from

MEMORANDUM OF DECISION - 24

independent inquiry.  The very nature and magnitude of the assets belies the too facile defense that they were simply overlooked or forgotten.

As noted previously, whether a debtor harbors the "intent" to hinder, delay or defraud the trustee or creditors is a question of fact, which can be established by circumstantial evidence or by inferences drawn from a course of conduct.  It is common for a trier of fact to rely on circumstantial evidence to resolve factual issues bearing on a party's state of mind.  *See*, *e.g.*, *Zilog, Inc., v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1008 (9th Cir. 2006); *United States v. Sullivan*, 522 F.3d 967, 974–76 (9th Cir. 2008).  Indeed, absent an admission, circumstantial evidence typically is the only means by which a party may prove another's state of mind.

The Court has carefully evaluated Debtor's testimony.  He claimed to have poor memory on certain subjects challenged by Trustee.  Yet, on other occasions, he professed firm recall and specific knowledge.  When pressed by Trustee on cross-examination, previously unconditional responses became equivocal.  Debtor's testimonial credibility was not strong.  On important questions of nondisclosure of significant assets, Debtor's explanations were not persuasive.

Debtor claimed to understand the importance of signing a document under penalty of perjury.  Despite this understanding, Debtor failed on multiple accounts to include assets on his schedules, knowing that the purpose of the schedules is to provide an accurate list of ownership in property.  Debtor's disclosure of the

omitted assets was ultimately made only after independent discovery by the Trustee.

Based on the existence of pre-petition litigation, the nature of the disclosure in Debtor's initial schedules, Debtor's belated amendments to those schedules to disclose significant assets, and his insufficient explanations regarding the same, the Court concludes that Debtor concealed this property with the intent to hinder or defraud the creditors of the estate and Trustee. That the property was later disclosed in amended schedules, after Trustee's discovery, provides no absolute defense. Trustee has met his burden under § 727(a)(2)(B).

### D.   Section 727(a)(4)

Section 727(a)(4)(A) operates to deny a discharge to a debtor who "knowingly and fraudulently" makes a false oath or account in the course of a bankruptcy case.

"The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 274 (9th Cir. BAP 1990)). To prevail on a § 727(a)(4)(A) claim Trustee must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz*, 606 F.3d at 1197

MEMORANDUM OF DECISION - 26

(quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP

2005)).

### 1.    Debtor made false oaths in connection with his bankruptcy

"A false statement or an omission in the debtor's bankruptcy schedules or

statement of financial affairs can constitute a false oath." *In re Retz*, 606 F.3d at

1196 (quoting *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R.

163, 172 (9th Cir. BAP 2007), *aff'd* 578 F.3d 1167, 1168 (9th Cir. 2009)

(adopting the BAP's statement of applicable law)).[31]

The "concealment" of assets addressed under § 727(a)(2)(B) are largely

relevant here as well.  The evidence shows Debtor omitted numerous items of

property from his originally filed bankruptcy schedules, *i.e.*, the farm labor liens,

seed liens, and crop liens; the counterclaims against creditors later asserted in

litigation; the membership interests in various companies; the claims to proceeds

from a crop insurance policy; the 1/3 interest in real property located in Elmore

County, Idaho; the 2008 Arctic Cat ATV and 2008 Chevy truck; and the mineral

---

[31]    As this Court explained in *Murphy v. Vanschoiack (In re Vanschoiack)*, 356 B.R. 56, 63 n.6 (Bankr. D. Idaho 2006):

> A debtor is required to make full and complete disclosure of assets, liabilities and transactions. . . .  This requirement is enforced, *inter alia*, by § 727(a)(4).  The function of the requirement is to ensure accurate and dependable information is given to the Court, trustee, and creditors upon which they can rely without the need for additional inquiry. . . .  Debtors may not elect what to disclose; all property and interests in property must be disclosed.

MEMORANDUM OF DECISION - 27

rights related to land in Canyon County, Idaho. While Debtor disclosed some of these items on amended schedules and statements, those disclosures were made only after the omissions were discovered by creditors or Trustee.

At trial and in his closing brief, Debtor made several arguments, including that of reliance on his counsel. Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts. *Adeeb*, 787 F.2d at 1343 (citing *Hultman v. Tevis*, 82 F.2d 940, 941 (9th Cir. 1936); *In re Nerone*, 1 B.R. 658, 660 (Bankr. S.D.N.Y. 1979)). However, the debtor's reliance must be in good faith. *See Retz*, 606 F.3d at 1199 ("The advice of counsel is not a defense when the erroneous information should have been evident to the debtor."). Debtor consistently places blame on his chapter 12 attorney, Robinson, for failing to alert him to the problems now identified with the bankruptcy schedules and SOFA. But Robinson would have no apparent reason to know of the omission of information; all information originated with Debtor. Moreover, Debtor signed the several declarations, verifying under penalty of perjury that the statements were true and correct to the best of his knowledge and belief. Clearly they were not true and correct.

And Debtor's verifications go to a second problem with his suggested deflection onto his attorney. Reliance on counsel is not effective if the debtor has sufficient reason to know that the disclosures are inaccurate in addition to being incomplete. Debtor reviewed the schedules and statement before verifying them.

MEMORANDUM OF DECISION - 28

He had the opportunity to see how the disclosed assets and information were characterized. He was intimately involved with all the farming and the LLC's operations. If Robinson or his staff erred in the process of preparing the documents, Debtor was required to see that those mistakes were fixed before signing and filing. Debtor, here effectively alone, had the knowledge to ensure accurate, as well as complete, disclosures. The argument that he failed to read the schedules and statements well or thoroughly, or merely forgot or overlooked assets, lacks credibility and persuasiveness.

The statements, made under oath, omitted assets and therefore constitute a false oath under § 727(a)(4).

### 2.    Debtor's false oaths related to material facts

"A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Retz*, 606 F.3d at 1198 (quoting *Khalil*, 379 B.R. at 173). "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless relationship or holding; such a defense is specious." *Vanschoiack*, 356 B.R. at 64 (quoting *Chalk v. Moorefield (In re Chalk),* 748 F.2d 616, 618 (9th Cir. 1984). And, "[t]he asset's value need not be 'material,' nor must a debtor 'succeed in harming creditors to warrant denial of discharge.'" *Id.* (citing *Bernard*, 96 F.3d at 1281–82).

MEMORANDUM OF DECISION - 29

While value and equity are not required for an asset to be material, several of the assets at issue here, when disclosed in amended schedules, showed potential value for creditors.  The 1/3 interest in the Elmore County property alone was listed on the amended schedule A as worth $42,000.00 with no secured debt against it.  And the various alleged claims and counterclaims against creditors—many of whom were in litigation with Debtor—were relevant and material to the bankruptcy process and Trustee's investigation and administration independent of Debtor's suggested values.  Thus the Court concludes the omitted assets were material.

### 3.     Debtor's false oaths were made knowingly and fraudulently

Section 727(a)(4)(A) requires a false oath be made knowingly.  A debtor acts knowingly in making a false oath "if he or she acts deliberately and consciously."  *Retz*, 606 F.3d at 1198 (quoting *Roberts*, 3331 B.R. at 883–84).  The Court must also find that the false oath was made fraudulently.  *Id.*  To demonstrate fraudulent intent, Trustee must show that the false oath was made with the intention and purpose of deceiving the creditors or trustee—that is, he must show actual intent.  *Id.* at 1198–99.  Actual fraudulent intent is usually proven by circumstantial evidence, including inferences drawn from the debtor's conduct.  *Id.*

MEMORANDUM OF DECISION - 30

### a.    Knowingly

The Court finds that Debtor made these omissions and false statements knowingly.  The Court has considered carefully Debtor's testimony, and concludes that it is entitled to little weight insofar as he attempts to lay the blame for errors and omissions on his counsel or others.  And, generally, Debtor's credibility is tainted not only by those areas where Trustee impeached testimony, but by the equivocations and qualifications Debtor attempted to overlay on prior testimony once contrary information was highlighted.  Debtor knew of the assets, and failed to disclose them, and in fact deliberately and consciously signed multiple sworn schedules without disclosing the assets when he had ample opportunity throughout the chapter 12 process to do so.  The Court has considered Debtor's claim that he was confused or uncertain, or that he simply made mistakes based on lack of care, thought, or time.  The excuses are not persuasive given the nature of the errors and omissions and their importance to the attempted reorganization.

### b.    Fraudulently

Debtor admittedly knew and understood the significance of signing the various declarations under penalty of perjury.  Yet, as the Court has found, he knowingly omitted information and provided inaccurate information.  For the reasons articulated earlier in this Decision, the Court finds and concludes Debtor acted with the intent and purpose of deceiving creditors and Trustee.

MEMORANDUM OF DECISION - 31

Trustee has met his burden and judgment will be entered denying Debtor's discharge under § 727(a)(4)(A).

### E.    Section 727(a)(3)

To establish a prima facie case under § 727(a)(3), Trustee must show (1) that the debtor failed to maintain or preserve records, and (2) that the debtor's failure "makes it impossible to ascertain the debtor's financial condition and material business transactions." *Caneva*, 550 F.3d at 761 (quoting *Lansdowne v. Cox (In re Cox) ("Cox II")*, 41 F.3d 1294, 1296 (9th Cir. 1994).[32]  Adequacy of debtor's financial books and records must be decided on a case-by-case basis, with consideration for the debtor's business operations and sophistication.  The inquiry focuses on the nature and extent of books and records others in similar circumstances would ordinarily keep.  *Petro Concepts, Inc. v. Mundt (In re Mundt)*, 10.1 I.B.C.R. 8, 15, 2009 WL 5386131, at *12 (Bankr. D. Idaho 2009).  If the failure to maintain or preserve is shown, then the burden of proof "shifts to the debtor to justify with a credible explanation the inadequacy or nonexistence of the records." *Id.* (quoting *Cox II*, 41 F.3d at 1297).

The Court exhaustively analyzed the record-keeping and bookkeeping of

---

[32]  The Ninth Circuit has explained that while the purpose of § 727(a)(3) "is to make discharge dependant on the debtor's true presentation of his financial affairs," *Caneva*, 550 F.3d at 761 (citing *Cox II*, 41 F.3d at 1296), it "does not require absolute completeness in making or keeping records." *Id.* (quoting *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)).  Instead, the Code contemplates a debtor will provide sufficient written documentation to allow his creditors to reasonably "ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.* (quoting *Rhoades*, 453 F.2d at 53).

Debtor, the LLC, and the Trust in the LLC Action.  It there concluded that substantive consolidation was required because, in material part, the entanglement of Debtor's affairs with the LLC and the Trust was so severe that the time and expense necessary to even attempt to unscramble them eclipsed any benefit.  *See Gugino v. Clarks Crystal Springs Ranch, LLC*, 2014 WL 7409086, at *9–11, *16–17; *see also In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000).  Debtor's testimony, the incorporated testimony from the LLC Action of Epis and Gabriel, and the documents introduced herein, provide preponderating evidence that, while there were records, they did not provide creditors or Trustee the ability to ascertain with reliability Debtor's financial affairs.  Debtor consistently conflated his financial affairs with those of the Trust and the LLC.  This allowed him to access all resources of the LLC and apply them as he alone determined beneficial, without regard to the rights of creditors or of the children beneficiaries of the Trust.

The records that were kept are not adequate.  Indeed, the state of the records compelled the Court to find that substantive consolidation was appropriate.  The burden under § 727(a)(3) shifted to Debtor to justify the inadequacy of the records.  He failed to meet that burden.  Thus, Trustee has established a right to relief, and Debtor's discharge will be denied under § 727(a)(3).

MEMORANDUM OF DECISION - 33

**F.      Section 727(a)(6)(A)**

A debtor is not entitled to a discharge if "the debtor has refused, in the case

. . . to obey any lawful order of the court, other than an order to respond to a

material question or testify[.]"  An order is lawful if it is issued by a court with

jurisdiction over the subject matter and the person to which it was issued.  *See*

*Rainsdon v. Leiser (In re Leiser),* 2014 WL 3548929, at *3–4 (Bankr. D. Idaho

2014) (addressing revocation of discharge under § 727(d)(3) based on an alleged

violation of § 727(a)(6)(A) and *citing Maness v. Meyers*, 419 U.S. 449, 459 (1975)

(stating "an order issued by a court with jurisdiction over the subject matter and

the person must be obeyed by the parties until it is reversed by orderly and proper

proceedings.")).  This Court has broad discretion to determine if a particular

violation of its orders is so serious as to require the denial of discharge under

§ 727(a)(6)(A).  *Devers*, 759 F.2d at 755; *Cutter v. Seror (In re Cutter)*, 2010 WL

6467694, at *12 (9th Cir. BAP Oct. 21, 2010).

Trustee bears the burden to prove by a preponderance of the evidence "that

the debtor (a) was aware of the order; and (b) willfully or intentionally refused to

obey the order (*i.e.* something more than a mere failure to obey the order through

inadvertency, mistake or inability to comply)."  *Gugino v. Cardenas (In re*

*Cardenas)*, 2011 WL 3510941, at *2–3 (Bankr. D. Idaho Aug. 10, 2011) (quoting

*Schwarzkopf v. Goodrich (In re Michaels)*, 2009 WL 7809926, at *5 (9th Cir. BAP

Feb. 27, 2009)).  Once this showing is made, the burden shifts to Debtor to

MEMORANDUM OF DECISION - 34

demonstrate why the discharge should not be denied. *In re Cardenas*, 2011 WL 3510941, at *2.

Both Debtor and his sister, Judith Appleby, testified that the equipment asserted to be owned by the LLC—all of which was subject to the injunction—was being used by Debtor's parents in 2013 and as late as spring 2014 for dryland farming. That the property was so used is not in dispute. Nor is the manner in which Debtor's parents obtained and used the equipment, which was through Debtor's personal efforts and involvement.

Debtor argues, in part, that the "use" of the equipment did not constitute a "transfer" as prohibited by the terms of the injunction.

It is true that § 101(54) of the Code provides a broad definition of the term "transfer," and that this definition does not specifically address the question of allowing another party to use property of the estate. However, this definition generally deals with other Code provisions addressing the occurrence of transfers. *See*, *e.g.*, § 549 (post-petition transfers). More broadly defined, a "transfer" is "(*n.*) Any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance," and "(*v.*) To convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of." BLACK'S LAW DICTIONARY 1636 (9th ed. 2009).

While the injunction did not specifically incorporate either definition, it

MEMORANDUM OF DECISION - 35

was clear from the process up to and including the entry of the injunction that the

LLC's assets were to be frozen and protected pending the outcome of the LLC

Action.  This prohibited "use" of the equipment (a change of possession and

control) as well as a "transfer" of an interest in it.  In fact, the temporary

restraining order in the LLC Action specifically noted that the LLC "will still be

able to access, *use* and transfer *property with the express written permission of the*

*Trustee, if necessary*."  Adv. No. 13-06016-TLM, Doc. No. 5 at 2 (emphasis

added).  This same language is included in the preliminary injunction.  *Id.*, Doc.

No. 16 at 3.  Debtor was aware of this language, as he accepted service of the

injunction on July 8, 2013.  *Id.*, Doc. No. 18.  By permitting and facilitating the

possession and use of the equipment by his parents, Debtor violated the

injunction.[33]

    The second aspect under § 727(a)(6) is whether the violation of the order

was "willful."  Trustee was not required to prove Debtor had malicious intent, or

that he set out with the design to ignore and violate the order.  *See Michaels*, 2009

WL 7809926, at *7 (noting that motive is not a consideration).  Debtor accepted

service of the injunction, knew it had been entered, and knew its purpose and its

terms.  The use of the equipment was not through oversight, mistake or done by

others behind Debtor's back.  He affirmatively acted in arranging for and

---

    [33]  Debtor's other defense that there was a lack of proof of damage to, or wear and tear
upon, the equipment, is of no moment.  Not only might one assume that by its very use in
farming, the equipment sustains wear and tear, but proof of damage is not a prerequisite to
finding a violation.

MEMORANDUM OF DECISION - 36

facilitating the use of the equipment by his parents.

Therefore, the Court finds that Debtor violated the injunction issued in June 2013. On these grounds, judgment will be entered denying Debtor's discharge under § 726(a)(6)(A).

**CONCLUSION**

The Court finds that Trustee met his burden in demonstrating that Debtor's discharge should be denied under § 727(a)(2)(B), (a)(3), (a)(4)(A), and (a)(6)(A). Trustee shall submit an appropriate form of judgement for entry.

DATED: February 12, 2015



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE